# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| BETTY S. LEATHERS,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY; STATE FARM FIRE AND CASUALTY COMPANY; and STATE FARM GENERAL INSURANCE COMPANY,<br><br>　　　　Defendants. | CIVIL ACTION<br>No. 1:12-cv-00198-SCJ |

## O R D E R

This matter is before the Court on Defendants State Farm Mutual Automobile Insurance Company, State Farm Fire and Casualty Company, and State Farm General Insurance Company's (collectively "Defendants" or "State Farm") Motion for Summary Judgment [Doc. No. 186]. For the reasons explained in this order, Defendants' motion is **GRANTED**.

## I.　FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Betty S. Leathers ("Plaintiff") is an independent contractor insurance agent for State Farm [Doc. No. 186-5, 2]. Plaintiff began her employment as an independent contractor for State Farm in 1981 when she signed the State Farm

Agent's Agreement (the "AA3") [*id.*].[1] Under the terms of the AA3, Plaintiff, as an independent contractor, solicits fire, business liability, and auto insurance policies on behalf of State Farm [Doc. No. 186-5, 2]. As part of her employment, Plaintiff maintains her own agency, complete with her own staff, located in Decatur, Georgia [*id.* at 4].

Plaintiff originally filed suit in this action in the State Court of Dekalb County, Georgia on December 13, 2011, asserting several claims against Defendants, including a claim for breach of contract [Doc. No. 1-1, 17-43]. Defendants subsequently removed this action to this Court on January 20, 2012 on the basis of diversity jurisdiction [Doc. No. 1, 3]. On March 21, 2012, after Plaintiff had filed an amended complaint, Defendants filed a motion for partial judgment on the pleadings, requesting this Court dismiss all of Plaintiff's claims except for the breach of contract claim [Doc. No. 62, 1-2]. This Court entered an order granting

---

[1] The parties do not present the Court with a signed copy of the AA3, claiming said document is lost [Doc. No. 8, 2]. However, both parties concede that the contract attached to Plaintiff's deposition as Exhibit 2 [Doc. No. 203-1, 3-8] is an accurate copy of the AA3. Therefore, the Court considers said contract as valid evidence of the terms of the AA3. *See* Fed. R. Evid. 1004(a) (stating other evidence of the contents of a writing is admissible when "all the originals are lost or destroyed, and not by the proponent acting in bad faith."); *see also Klein v. Frank*, 534 F.2d 1104, 1107-08 (5th Cir. 1976) (describing "the generally accepted rule that if the party relying upon the writing can prove that a writing existed and has been lost or destroyed, he is relieved of the burden of producing the original and can present secondary evidence of its contents.").

Defendants' motion for partial judgment on the pleadings on November 19, 2012 [Doc. No. 161, 22]. Therefore, the only remaining claim in this action is Plaintiff's claim that Defendants breached the AA3.[2]

On January 16, 2013, Defendants filed a motion for summary judgment on Plaintiff's remaining breach of contract claim [Doc. No. 186, 2]. Plaintiff filed a response to this motion on February 6, 2013 [Doc. No. 199, 25]. Defendants subsequently filed a reply brief in support of their motion for summary judgment on February 22, 2013 [Doc. No. 228, 16].

Below, as it is ripe for adjudication, the Court addresses Defendants' motion for summary judgment.

## II. DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

### A. Legal Standard

Federal Rule of Civil Procedure 56 provides "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."Fed. R. Civ. P. 56(a).[3]

---

[2] While dismissing the covenant of good faith and fair dealing as a standalone claim, the Court noted in its November 19, 2012 order that said covenant is still applicable to Plaintiff's breach of contract claim [*id.* at 18].

[3] On December 1, 2010, an amended version of Rule 56 of the Federal Rules of Civil Procedure became effective. The amendments to Rule 56 "are intended to improve the

A factual dispute is genuine if the evidence would allow a reasonable jury to find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if it is "a legal element of the claim under the applicable substantive law which might affect the outcome of the case." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997).

The moving party bears the initial burden of showing the Court, by reference to materials in the record, that there is no genuine dispute as to any material fact that should be decided at trial. *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1260 (11th Cir. 2004) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The moving party's burden is discharged merely by "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support [an essential element

---

procedures for presenting and deciding summary-judgment motions" and "are not intended to change the summary-judgment standard or burdens." Committee on Rules of Practice and Procedure, Report of the Judicial Conference, page 14 (Sept. 2009).; *Farmers Ins. Exchange v. RNK, Inc.*, 632 F.3d 777, 782 n.4 (1st Cir. 2011). "[B]ecause the summary judgment standard remains the same, the amendments 'will not affect continuing development of the decisional law construing and applying' the standard now articulated in Rule 56(a). Adv. Comm. Notes to Fed. R. Civ. P. 56 (2010 Amends.). Accordingly, while the Court is bound to apply the new version of Rule 56, the undersigned will, where appropriate, continue to cite to decisional law construing and applying prior versions of the Rule." *Murray v. Ingram*, No. 3:10-CV-348-MEF, 2011 WL 671604, at *2 (M.D. Ala. Feb. 3, 2011).

of] the nonmoving party's case."*Celotex Corp.*, 477 at 325. In determining whether the moving party has met this burden, the district court must view the evidence and all factual inferences in the light most favorable to the party opposing the motion. *Johnson v. Clifton*, 74 F.3d 1087, 1090 (11th Cir. 1996). Once the moving party has adequately supported its motion, the non-movant then has the burden of showing that summary judgment is improper by coming forward with specific facts showing a genuine dispute. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). There is no "genuine [dispute] for trial" when the record as a whole could not lead a rational trier of fact to find for the nonmoving party. *Id.* (citations omitted). All reasonable doubts, however, are resolved in the favor of the non-movant. *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993).

B.   Discussion

Under Georgia law, the elements for a breach of contract claim are: "the (1) breach and the (2) resultant damages (3) to the party who has the right to complain about the contract being broken." *Kuritzky v. Emory Univ.*, 294 Ga. App. 370, 371, 669 S.E.2d 179, 181 (2008).[4] "The construction of a contract is a question of law for the court." O.C.G.A. § 13-2-1. Therefore, absent an ambiguity that cannot be negated by

---

[4] As this Court is sitting in diversity jurisdiction, it must apply the substantive law of Georgia alongside federal procedural law. *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938).

a court's application of the statutory rules of construction, issues regarding a contract's interpretation may be resolved at summary judgment. *Kusuma v. Metametrix, Inc.*, 191 Ga. App. 255, 256, 381 S.E.2d 322, 323 (1989).

Here, Plaintiff claims that Defendants breached the AA3 by performing the following acts: 1. Mandating Plaintiff pay $14,000 to State Farm to cover a settlement filed against State Farm Fire and Casualty Company, Plaintiff, one of Plaintiff's staff agents, and two other parties; 2. Mandating Plaintiff re-inspect 192 houses based on an anonymous phone call accusing Plaintiff of underwriting fraud; and 3. Placing Plaintiff on non-binding status in regards to fire insurance for three months. Plaintiff further alleges that all three of these acts breached Section I(B) of the AA3 (the "Independent Contractor Provision"), which states in pertinent part that Plaintiff has "full control of [her] daily activities, with the right to exercise independent judgment as to time, place, and manner of soliciting insurance, servicing policyholders, and otherwise carrying out the provisions of this Agreement" [Doc. No. 203-1, 3]. Below, the Court addresses each of Plaintiff's remaining three breach of contract claims in turn.[5]

---

[5] In her complaint, Plaintiff also alleges that Defendants breached the AA3 by mandating that she pay $3,863.63 to cover her customers bad checks, and by improperly withholding $2,529.57 of Plaintiff's personal funds by placing said funds in her Premium Fund Account [Doc. No. 1-1, 16]. However, in response to Defendants' motion for summary judgment,

### 1. Defendants did not breach the AA3 by requesting Plaintiff pay $14,000 to cover a lawsuit settlement

Under Georgia law, a person is employed as an independent contractor if he has the right to control the time, manner, and performance of executing his specific work-related duties. *McLaine v. McLeod*, 291 Ga. App. 335, 339, 661 S.E.2d 695, 699 (2008). "[T]he chief test for distinguishing a servant from an independent contractor is whether the contract gives, or the employer assumes, the right to control the time,

---

Plaintiff does not address these claims. As a result, these claims are dismissed as unopposed. *See* LR 7.1B, NDGa (providing that "[f]ailure to file a response shall indicate that there is no opposition to the motion."); *see also Kramer v. Gwinnett Cnty., Ga.*, 306 F. Supp. 2d 1219, 1221 (N.D. Ga. 2004) ("Consequently, a party's failure to respond to any portion or claim in a motion indicates such portion, claim or defense is unopposed."). Further, Plaintiff's complaint and amended complaint(Plaintiff's amended complaint only contains revised and additional paragraphs to the original complaint and, therefore, cannot be read as a standalone document) alleges Defendants breached the Independent Contractor Provision and the advertisement provision "under (F)" for failing to include Plaintiff on the State Farm Auto Quote website [Doc. No. 1-1, 40]. However, in response to Defendants' motion for summary judgment, Plaintiff alleges that Defendants breached "Paragraph 3 of the Preamble of the AA3 by failing to adequately communicate that Non-Select Agents Would Not Receive Leads from the Auto Quote Feature on the State Farm Website" [Doc. No. 199, 18] (emphasis removed). While both relate to Plaintiff's lack of inclusion on the State Farm website, these are distinct claims. Therefore, Plaintiff's claim that Defendants breached the Independent Contractor Provision and Section I(F) for failing to include her on the State Farm website is dismissed as unopposed. Also, as Plaintiff raised her breach of contract claim for lack of communication under the third paragraph of the preamble of the AA3 for the first time in response to Defendants' motion for summary judgment, it must be dismissed. *See Gilmour v. Gates, McDonald and Co.*, 382 F.3d 1312, 1313 (11th Cir. 2004) (holding that a non-moving party plaintiff cannot raise a new legal claim for the first time in response to the opposing party's motion for summary judgment). Therefore, the only breach of contract claims before this Court are the three claims referenced *supra*.

manner, and method of the performance of the work." *Wilann Props. I, LLC v. Ga. Power Co.*, 321 Ga. App. 297, 305, 740 S.E.2d 386, 392 (2013). Therefore, in order to comply with Georgia law, a contract establishing an independent contractor relationship must provide that the agent in question has full control of the performance of his work-related duties.

Here, Plaintiff was asked to reimburse State Farm in the amount of $14,000 for a settlement reached in an action filed against Plaintiff, Plaintiff's employee, State Farm Fire and Casualty Company, and two other parties [Doc. No. 186-5, 11].[6] Plaintiff asserts that this request "interfered with [Plaintiff's] status as an independent contractor and prohibited her from exercising her independent judgment" [Doc. No. 199, 9-10]. However, Plaintiff fails to establish how Defendants' payment request is a breach of the Independent Contractor Provision.

The Independent Contractor Provision is unambiguous and the parties' intention in implementing this provision is clear. O.C.G.A. § 13-2-3 ("The cardinal rule of construction is to ascertain the intention of the parties."). Specifically, the Independent Contractor Provision is in place, and simply establishes that, Plaintiff

---

[6] Plaintiff acknowledges that she received a check from Defendants in the amount of $13,000 plus interest as reimbursement for the $14,000 settlement payment [Doc. No. 213, 32]. However, Plaintiff did not deposit this check because "she did not think that her claim was satisfied" [Doc. No. 1-1, 22].

is in fact an independent contractor, i.e. in control of her work-related duties. *Duffett v. E&W Props., Inc.*, 208 Ga. App. 484, 486, 430 S.E.2d 858, 859 (1993) (stating "where the terms of a written contract are clear and unambiguous, the court will look to the contract alone to find the intention of the parties."). Therefore, Defendants can only breach the Independent Contractor Provision by controlling Plaintiff's performance in issuing fire, business liability and auto insurance. Defendants' request that Plaintiff reimburse State Farm in the amount of $14,000 had no bearing on Plaintiff's ability to issue insurance. As a result, Defendants' payment request did not constitute a breach of the Independent Contractor Provision.[7]

Plaintiff further argues that Defendants' payment request "breached the implied covenant of good faith and fair dealing" [Doc. No. 199, 5]. However, under Georgia law, a party cannot establish a claim based on the implied covenant of good faith and fair dealing absent the breach of an express term in a contract. *Morrell v. Wellstar Health Sys., Inc.*, 280 Ga. App. 1, 5, 633 S.E.2d 68, 72 (2006) (stating "there is no independent cause of action for violation of the covenant apart from breach of an

---

[7] In response to Defendants' motion for summary judgment, Plaintiff argues that Defendants' $14,000 payment request also "breached the 'full and faithful observance and performance' clause of the AA3" [Doc. No. 199, 10]. However, because it was not included in Plaintiff's complaint or amended complaint, the Court does not consider this argument. *Gilmour*, 382 F.3d at 1315 ("A plaintiff may not amend her complaint through argument in a brief opposing summary judgment.").

express term of the contract."). As explained *supra*, Defendants' payment request did not breach the Independent Contractor Provision and, therefore, said payment request did not violate the implied covenant of good faith and fair dealing. Accordingly, Defendants did not breach the AA3 by requesting Plaintiff reimburse State Farm in the amount of $14,000 for a lawsuit settlement.

>    **2.    Defendants did not breach the AA3 by requesting re-inspections of 192 properties**

Plaintiff claims that Defendants breached the Independent Contractor Provision of the AA3 by mandating that, after receiving an anonymous phone call accusing her of underwriting fraud, that Plaintiff re-inspect 192 properties.[8] Plaintiff further alleges that these 192 re-inspections were ordered by Defendants "in addition to the 40 properties she and other agents during the same time were required to inspect" [Doc. No. 1-1, 43].[9] In their motion for summary judgment,

---

[8] Defendants maintain that "a vendor, hired by State Farm, did the 192 reinspections[sic] and then Plaintiff was asked to perform the follow-up work on the properties that needed it" [Doc. No. 186-1, 16]. As explained *infra*, the Court determines that Defendants had the right, pursuant to the terms of the AA3, to order Plaintiff or another party to perform re-inspections of 192 properties. Therefore, the Court does not need to address the issue of who actually performed the 192 re-inspections.

[9] In response to Defendants' motion for summary judgment, Plaintiff also alleges that Defendants mandated that she perform "an additional 441 reinspections[sic] pursuant to the Prioritized Reunderwriting Listing" [Doc. No. 199, 13]. However, this allegation was not included in Plaintiff's complaint or amended complaint. As this new factual allegation

Defendants argue, *inter alia*, that, pursuant to the AA3, they have "the undisputed [] right to reinspect risks and ask its agents to assist in reinspecting risks if such action advances the interests of [State Farm]" [Doc. No. 186-1, 17-18]. The Court finds Defendants' argument is an accurate description of their authority under the AA3.

Section I(L) of the AA3 states that State Farm will "retain the right to prescribe all policy forms and provisions . . . and rules governing the binding, acceptance, renewal, rejection, or cancellation of risks" [Doc. No. 203-1, 4]. Further, Plaintiff concedes that State Farm can require re-inspections of specific properties, particularly if there are "concerns about an agent's underwriting practices" [Doc. No. 201, 17] (emphasis removed). In support of her argument, Plaintiff states that "[t]ypically, Defendants only assigned [Plaintiff] about 60 reinspections[sic] in one year" [Doc. No. 199, 12]. Therefore, Plaintiff does not argue that State Farm lacks authority to order re-inspections. Instead, Plaintiff's argument is that the 192 re-inspections were simply excessive. However, in response to Defendants' motion for summary judgment, Plaintiff does not directly address the issue of State Farm's

---

is raised for the first time in response to Defendants' motion for summary judgment, it will not be considered. *Gilmour*, 382 F.3d at 1315 ("A plaintiff may not amend her complaint through argument in a brief opposing summary judgment.").

contractual authority under the AA3 to issue re-inspections. Here, the language of Section I(L) of the AA3, by stating State Farm has the authority to make rules concerning their acceptance of insurance risks, gives State Farm the right to order re-inspections of risks on particular properties if necessary. This provision does not limit the amount of re-inspections that can be ordered in a given year. Further, such a limitation would make little sense, as the amount of necessary re-inspections are likely to vary from year to year. Therefore, because the AA3 gives State Farm full discretion to order re-inspections of specific properties as deemed necessary, State Farm's request that 192 properties be re-inspected did not breach the AA3. *See Planning Techs., Inc. v. Korman*, 290 Ga. App. 715, 718, 660 S.E.2d 39, 42 (2008) (stating that, if an agreement expressly gives a party uncontrolled discretion to make a specific decision, "there can be no breach of the agreement predicated on the decision.").

Plaintiff also argues that the ordered re-inspections constitutes "a breach of Defendants['] duty of good faith and fair dealing" [Doc. No. 199, 16]. Again, as expressed in *Morrell*, a party cannot establish a claim based on the implied covenant of good faith and fair dealing absent the breach of an express term in a contract. As explained *supra*, the re-inspections ordered by State Farm did not breach the AA3.

Again, the AA3 gives State Farm authority to order re-inspections and "there can be no breach of an implied covenant of good faith where a party to a contract has done what the provisions of the contract expressly give him the right to do." *S. Bus. Machs. of Savannah, Inc. v. Nw. Fin. Leasing, Inc.*, 194 Ga. App. 253, 256, 390 S.E.2d 402, 405 (1990) (internal quotation marks and citation omitted). Accordingly, Defendants did not breach the AA3 by requesting that 192 properties concerning Plaintiff's issued insurance policies be re-inspected.

> **3. Defendants did not breach the AA3 by placing Plaintiff on non-binding status for three months**

From October 2010 to early January 2011, Plaintiff was placed on "non-binding status" for fire insurance. During this period of non-binding status, "Plaintiff could still fully work with customers and policyholders and write policies, but she needed underwriting to bind the policies before they would go into effect" [Doc. No. 186-1, 19]. Plaintiff alleges that Defendants, by placing her on non-binding status, violated the Independent Contractor Provision "by wrongfully asserting control over an activity [Plaintiff] performs as an independent contractor" [Doc. No. 199, 24].

In their motion for summary judgment, Defendants argue that the language of Section I(L) of the AA3 gives them express authority to place Plaintiff on non-

binding status [Doc. No. 186-1, 18]. Again, Section I(L) of the AA3 states that State Farm will "retain the right to prescribe all policy forms and provisions . . . and rules governing the binding, acceptance, renewal, rejection, or cancellation of risks" [Doc. No. 203-1, 4]. In response to this argument, Plaintiff asserts that Section I(L) of the AA3 only gives State Farm "the right 'to prescribe' rules" [Doc. No. 199, 22]. Plaintiff elaborates on this argument by asserting Section I(L) only gives State Farm the authority "to create a policy regarding placing agents on non-binding [status]" [*id.* at 24]. Plaintiff further asserts that her placement on non-binding status did not comply with Section I(L) because Defendants failed "to create specific rules regarding non-binding" [*id.*]. As best as this Court can determine, Plaintiff argues that State Farm needed to create and/or articulate a new rule regarding her specific placement on non-binding status from October 2010 to early January 2011 before such an action could be implemented.

As previously stated, when interpreting the meaning or reach of a contract, "[t]he cardinal rule of construction is to ascertain the intention of the parties." O.C.G.A. § 13-2-3. "[W]here the terms of a written contract are clear and unambiguous, the court will look to the contract alone to find the intention of the parties." *Duffett*, 208 Ga. App. at 486, 430 S.E.2d at 859. Here, Section I(L) clearly

gives State Farm the right to place restrictions on Plaintiff's ability to enter into binding insurance policies on behalf of State Farm. In fact, Plaintiff's concedes that State Farm has the authority to place her on non-binding status by stating "Defendants can regulate binding [of insurance]" [Doc. No. 199, 23]. Instead, Plaintiff argues that, before placing her on non-binding status, State Farm is required to first "create a policy regarding placing agents on non-binding" [*id.* at 24]. This argument is nonsensical, as Section I(L) is in fact the articulated policy that gives State Farm the authority to place Plaintiff on non-binding status.

As best at this Court can determine, Plaintiff argues that Section I(L) only allows State Farm the authority to articulate a rule on placing Plaintiff on non-binding status. Then, once the rule is articulated, State Farm has the authority to enforce said rule. This interpretation cannot embody the intent of the parties as it would create a needless formality in placing Plaintiff on non-binding status. For example, Plaintiff argues that State Farm, by failing to articulate a new rule on her non-binding status for fire insurance from October 2010 to January 2011 before such action was taken, was "able to arbitrarily dictate the length and terms of [Plaintiff's] stint on non-binding" [*id.*]. However, even under this interpretation, State Farm can place Plaintiff on non-binding status for as long as they deem necessary pursuant

to the authority granted by Section I(L). As a result, articulating or creating a new rule concerning a specific placement on non-binding status is not practical. Specifically, Plaintiff would have no authority to challenge any new "rule" regarding her placement on non-binding status, so the formality of creating said rule would have no effect on Plaintiff's actual placement on non-binding status. Therefore, Plaintiff's argument does not represent the intent behind Section I(L) of the AA3. As a result, no ambiguity exists on the meaning or reach of Section I(L) as said provision can only logically be interpreted as providing State Farm the authority to directly place Plaintiff on non-binding status when necessary. *See Kusuma*, 191 Ga. App. at 256, 381 S.E.2d at 323 ("The existence or non-existence of an ambiguity is itself a question of law for the court."). Therefore, as State Farm had the authority to place Plaintiff on non-binding status for fire insurance for three months, said act did not breach the AA3.

Plaintiff further argues that, by placing her on non-binding status for three months, "State Farm also breached State Farm's contractual duty of good faith and fair dealing" [Doc. No. 1-1, 17]. However, as expressed in *Morrell*, a party cannot establish a claim based on the implied covenant of good faith and fair dealing absent the breach of an express term in a contract. Here, as State Farm did not breach the

AA3 by placing Plaintiff on non-binding status for three months, said act does not constitute a breach of the implied covenant of good faith and fair dealing.

Plaintiff fails to establish that there is a genuine issue of material fact regarding her remaining breach of contract claim. Accordingly, Defendants' Motion for Summary Judgment [Doc. No. 186] is hereby **GRANTED**.

### III.  CONCLUSION

For the above stated reasons, Defendants' Motion for Summary Judgment [Doc. No. 186] is hereby **GRANTED**.

As there are no further issues outstanding, the Clerk is **DIRECTED** to **CLOSE THIS ACTION**.

**IT IS SO ORDERED,** this 28th day of August, 2013.

<pre>
                    s/Steve C. Jones
                    HONORABLE STEVE C. JONES
                    UNITED STATES DISTRICT JUDGE
</pre>